IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

WILBERT CHRETIN,                    §
                                    §
        Plaintiff,                  §
                                    §
v.                                  §    CIVIL ACTION NO. H-16-1353
                                    §
NANCY A. BERRYHILL,[1]              §
ACTING COMMISSIONER OF THE          §
SOCIAL SECURITY ADMINISTRATION,     §
                                    §
        Defendant.                  §

**<u>MEMORANDUM AND RECOMMENDATION</u>**

Pending before the court[2] are Plaintiff's Motion for Summary Judgment (Doc. 9) and Defendant's Cross-Motion for Summary Judgment (Doc. 6). The court has considered the motions, the responses, the administrative record, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED**.

## I. Case Background

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding Plaintiff's claims for

---

[1]     Carolyn W. Colvin was the Commissioner of the Social Security Administration at the time that Plaintiff filed this case but no longer holds that position. Nancy A. Berryhill is Acting Commissioner of the Social Security Administration and, as such, is automatically substituted as Defendant. See Fed. R. Civ. P. 25(d).

[2]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 3, Ord. Dated Aug. 30, 2016.

disability insurance benefits under Title II and for supplemental security income under Title XVI of the Social Security Act ("the Act").

A.  **Medical History**

Plaintiff was born on September 4, 1986.[3]  Plaintiff has a ninth-grade education and, in his most recent position, worked as a meat cutter for Luby's.[4]  In a decision dated February 8, 2007, Plaintiff was found to be under a disability beginning January 1, 2003.[5]

Plaintiff saw Balakrishna Reddy Mangapuram, M.D., ("Dr. Mangapuram") on October 18, 2011, for a disability determination services examination.[6]  Dr. Mangapuram listed Plaintiff's chief complaints as back, neck, ankle, and knee pain.[7]  Plaintiff's height and weight were recorded at seventy-four inches and 299 pounds.[8]  Plaintiff recounted his medical history, including that he had prior surgery on his left knee and right ankle, and that he had experienced pain, mostly back and neck pain, which was worse with sitting, standing, walking, bending, lifting, or raising his

---

[3]     See Transcript of Administrative Proceedings ("Tr.") 441.

[4]     See Tr. 67, 87-90.

[5]     See Tr. 749.

[6]     See Tr. 494-97.

[7]     See Tr. 494.

[8]     See Tr. 495.

2

arms up over his head.[9]  In terms of his left knee and right ankle pain, Plaintiff reported that it was "constant" and rated it an eight on a ten-point scale, stating that it was worse with standing, walking, and climbing stairs.[10]  Additionally, Plaintiff also experienced foot pain and a "burning sensation" in the plantar areas of his feet.[11]

Dr. Mangapuram found that Plaintiff "had a normal range of joint movements," but noted that he had pain in his left knee, especially when squatting.[12]  Additionally, Plaintiff reportedly could "lift, carry, and handle objects normally" and could bend over to pick up a pen.[13]  An x-ray of his knee revealed that he had "calcific densities in the posterior joint space" that "may represented joint bodies or secondary osteochondromatosis" and "mild osteoarthritis."[14]  An x-ray of his back showed "no acute injuries."[15]  Overall, Dr. Mangapuram concluded that Plaintiff had

---

[9]    See Tr. 494.

[10]    See id.

[11]    See id.

[12]    Tr. 496.

[13]    Id.

[14]    Tr. 497, 502, 504.

[15]    Tr. 497.

normal movement in his back and ankles.[16] Dr. Mangapuram referred Plaintiff for an orthopedic consultation for his knee pain.[17]

On November 21, 2013, Plaintiff visited the Texas Medical Rehabilitation and Pain Center, complaining of an increase in pain in his back, left knee, left shoulder, and right ankle.[18] Plaintiff complained that he had a "decreased range of motion, decreased activities of daily living, [and] decreased sleep secondary to pain."[19] Daily activities reportedly caused Plaintiff increased pain and he found relief through lying down and taking medication.[20] Anjali A. Jain, M.D., ("Dr. Jain") found that Plaintiff had: muscle spasms in his lumbar spine and left shoulder; a limited range of motion in his lumbar spine; a decreased range of motion in his left shoulder, right ankle, and right knee; and tenderness in his right knee.[21] Plaintiff was diagnosed with lower back pain, left shoulder pain, left knee pain, and left ankle pain.[22]

On December 4, 2013, Plaintiff returned to the Texas Medical Rehabilitation and Pain Center for a follow-up appointment.[23] In

---

[16]    See Tr. 497, 502, 504.

[17]    See Tr. 497.

[18]    See Tr. 620-21.

[19]    Tr. 620.

[20]    See id.

[21]    See Tr. 621.

[22]    See id.

[23]    See Tr. 618-19.

4

this appointment, Plaintiff stated that his back pain was "minimal" and that most of the pain came from both his knees, with his left knee occasionally swelling, but that his medication lessened the pain by about seventy percent.[24]   Standing for ten to fifteen minutes caused his left knee and right ankle to become swollen.[25] In examining Plaintiff, A.R.S. Prasad, M.D., ("Dr. Prasad") noted that he had pain and a restricted range of motion in his left knee, complete range of motion in his right knee, mild swelling in his right ankle and a "painful active range of motion" in this joint.[26] Plaintiff was seen for several follow up appointments; on January 29, 2014, he complained of increased pain in his right ankle, making it difficult to stand or walk, but denied paresthesias.[27] It was noted that he had only "mild pain" in his left knee and no lower back pain.[28]   However, Plaintiff was found to have a restricted range of motion in his left knee and pain in his right ankle.[29]   Taking pain medication reportedly lessened his pain.[30]

## B.  <u>Application to Social Security Administration</u>

---

[24]   <u>See</u> Tr. 618.

[25]   <u>See</u> <u>id.</u>

[26]   <u>Id.</u>

[27]   <u>See</u> Tr. 613-14.

[28]   <u>See</u> Tr. 613.

[29]   <u>See</u> <u>id.</u>

[30]   <u>See</u> <u>id.</u>

Plaintiff applied for disability insurance benefits, claiming an inability to work since January 1, 2003, and supplemental security income benefits on July 21, 2004, claiming a disability onset date of January 1, 2003.[31] In a disability report dated May 11, 2005, Plaintiff indicated that he experienced pain in his knees and ankles.[32] In terms of his daily activities, Plaintiff indicated that he had difficulty completing chores, shopping, walking, standing, lifting objects, using his arms, sitting, concentrating, remembering, understanding or following directions, completing tasks, and getting along with people.[33]

On February 8, 2007, an ALJ found that Plaintiff had been disabled since January 1, 2003.[34] The ALJ found that Plaintiff met the requirements of insured status through December 31, 2009, and that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.[35] Plaintiff's severe impairments were avascular nercrosis of the right ankle, a disc bulge at L5-S1, and a herniated cervical disc, which the ALJ noted limited Plaintiff's ability to work.[36] Plaintiff's impairments did not meet or medical

---

[31]   See Tr. 293-301.

[32]   See Tr. 321-25.

[33]   See Tr. 325.

[34]   See Tr. 749.

[35]   See Tr. 746.

[36]   See id.

equal a listed impairment.[37]  Plaintiff was unable to perform his past relevant work, and considering his age, education, RFC, and non-transferability of job skills, the ALJ found that no jobs in significant number existed in the national economy for Plaintiff to perform.[38]  Plaintiff was awarded benefits.[39]

On July 17, 2011, Plaintiff filled out a continuing disability review report.[40]  As to his conditions, Plaintiff indicated that he continued to have pain in his ankle and knee, could not sit for long periods, and he could not read.[41]  On a daily basis, Plaintiff would wake up around noon, get dressed, and stay at home.[42] Plaintiff used a cane sometimes in the morning to stand and walk.[43] Plaintiff had difficulty with the following daily activities: completing chores, shopping, walking, standing, lifting objects, using his arms, sitting, concentrating, remembering, understanding or following directions, completing tasks, and getting along with people.[44]

---

[37]    See id.

[38]    See Tr. 748-49.

[39]    See Tr. 749.

[40]    See Tr. 328-29.

[41]    See Tr. 329.

[42]    See Tr. 337.

[43]    See id.

[44]    See Tr. 338.

Plaintiff completed a function report on August 16, 2011.[45] In the function report, Plaintiff again indicated that he had difficulty sitting and standing, and that his arthritis in his neck and ankles caused him pain.[46] Plaintiff noted that he had difficulty reading and writing.[47] In terms of his daily routine, Plaintiff ate breakfast, took medicine, laid down to watch television, and ate throughout the day so he could take his medication with food.[48] Before the onset of his disability, Plaintiff was able to cook, clean, work, and care for himself.[49] In the updated function report, Plaintiff stated that he had difficulty sleeping, getting dressed, bathing, shaving, and cleaning himself.[50] Plaintiff did not prepare his own meals or complete household chores because of his pain.[51] Plaintiff drove, could leave his house unaccompanied, could grocery shop with others, pay bills, and count change, but could not handle a savings account or use a checkbook or money orders due to his difficulty reading and writing; he stated that he no longer had money to

---

[45]  See Tr. 340-41.

[46]  See Tr. 342.

[47]  See id.

[48]  See Tr. 343.

[49]  See id.

[50]  See id.

[51]  See id.

8

handle due to his condition.[52] Plaintiff's hobby was watching television, but he stated that it was difficult for him to watch television.[53] Additionally, Plaintiff spent time with his child on a daily basis, and went to church and visited his mother twice a week.[54] As to his relationships, Plaintiff said he had problems getting along with others, explaining that he did not have friends anymore because he was no longer social, and that he no longer had relations with his child's mother.[55]

Plaintiff had difficulty with lifting, squatting, bending, standing, walking, sitting, kneeling, climbing stairs, seeing, and using his hands.[56] In terms of walking, Plaintiff said that he could only walk about thirty feet before stopping to rest, and that he would need to rest for twenty to thirty minutes before walking again.[57] Plaintiff indicated difficulty with following written instructions but said that he was able to follow spoken instructions well, get along with authority figures, and was never fired due to problems with getting along with others.[58] With regards to stress, change, and fears, Plaintiff said that he was

---

[52]    See Tr. 344-46.

[53]    See Tr. 346.

[54]    See id.

[55]    See Tr. 347.

[56]    See id.

[57]    See id.

[58]    See id.

able to somewhat handle stress but had trouble with changes in his routine and was afraid of stairs.[59]  After Plaintiff had ankle surgery, Plaintiff utilized a cane.[60]  Plaintiff's medications caused side effects including drowsiness and dizziness.[61]

Plaintiff completed another disability report on December 1, 2011.[62]  Plaintiff stated that his condition had worsened, adding that he had increased difficulty walking due to pain in his knees and ankles, and that his thighs were now causing him pain.[63]  Specifically, Plaintiff stated that the pain and swelling in his knees and ankles hindered his ability to walk.[64]  Accordingly, Plaintiff's daily activities were limited.[65]  Plaintiff followed up with another disability report on July 26, 2013, in which he indicated that it was becoming more difficult for him to sit and drive, and that he could not sit or stand for long periods of time.[66]

On November 7, 2011, Kavitha Reddy, M.D., ("Dr. Reddy"), evaluated Plaintiff's physical residual functional capacity

---

[59]     See Tr. 348.

[60]     See id.

[61]     See Tr. 349.

[62]     See Tr. 354-62.

[63]     See Tr. 355.

[64]     See Tr. 355, 359.

[65]     See Tr. 360.

[66]     See Tr. 378-83.

("RFC").[67]  Dr. Reddy addressed Plaintiff's physical abilities, finding that he was capable of occasionally lifting and/or carrying fifty pounds, frequently lifting and/or carrying twenty-five pounds, standing and/or walking for about six hours in an eight-hour work day, sitting for six hours in an eight-hour work day, and unlimited pushing and/or pulling.[68]  Dr. Reddy found that Plaintiff was able to occasionally: climb ramps, stairs, ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, and crawl.[69]  According to Dr. Reddy, the record did not establish any visual, manipulative, communicative, or environmental limitations.[70]  Dr. Reddy concluded that Plaintiff's alleged limitations were not fully supported by the record.[71]

The Social Security Administration terminated Plaintiff's disability benefits on November 10, 2011, and a disability hearing officer denied Plaintiff's subsequent application for reconsideration.[72]  Plaintiff requested a hearing before an administrative law judge ("ALJ") of the Social Security Administration.[73]  The ALJ granted Plaintiff's request and conducted

[67] See Tr. 506-13.

[68] See Tr. 507.

[69] See Tr. 508.

[70] See Tr. 509-10.

[71] See Tr. 511.

[72] See Tr. 96-109, 136-45.

[73] See Tr. 153-55.

11

a hearing on July 2, 2014, in Houston, Texas.[74]

## C. __Hearing__

At the hearing, Plaintiff and a vocational expert ("VE"), Vicky Colenburg ("Colenburg") testified.[75] Plaintiff was represented by an attorney.[76]

As to his educational history, Plaintiff explained that he had a ninth-grade education, had not completed a GED, and had limited reading and writing abilities.[77] While in school, Plaintiff was enrolled in special education.[78] Plaintiff was able to pass his written driver's test after two or three attempts and drove on a daily basis.[79]

Plaintiff's last employment was at a nursing home where he worked for a few weeks as a dishwasher.[80] He discontinued this employment due to pain in his legs.[81] Prior to that, Plaintiff worked for Luby's as a meat cutter for approximately five years.[82]

---

[74]    See Tr. 62-95.  The ALJ tried to hold earlier hearings but they were postponed for various reasons, including inclement weather.  See Tr. 15.

[75]    See Tr. 62-95.

[76]    See Tr. 64.

[77]    See Tr. 67, 76.

[78]    See Tr. 76.

[79]    See Tr. 84.

[80]    See Tr. 68-69.

[81]    See id.

[82]    See Tr. 67, 87-90.

Plaintiff's prior work experience also included Sam's Club where he collected shopping carts and restocked tires for a year and working for his father as a landscaper for four years.[83]

Plaintiff's testified about his knees, ankle, and back pain.[84] Plaintiff used a cane and had been prescribed a crutch that he was no longer using as of the date of the hearing.[85] Plaintiff explained that the cane made it easier to walk and that he could only walk "[a] little" without it.[86] Both of Plaintiff's knees, his left shoulder, his back, and his right ankle caused him pain.[87] Plaintiff took daily medication for insomnia, muscle spasms, acid reflux, and pain.[88] Plaintiff received injections in his left knee to also reduce the pain, but he still experienced pain when he was standing.[89]

Plaintiff estimated that he could stand in one place for about twenty to thirty minutes with use of his cane.[90] Plaintiff also stated that his knee problems prevented him from climbing stairs

---

[83]    See Tr. 68-70.

[84]    See Tr. 72.

[85]    See id.

[86]    See Tr. 72-73.

[87]    See Tr. 74-75.

[88]    See Tr. 75-76.

[89]    See Tr. 80.

[90]    See Tr. 73.

and that his right ankle limited his ability to use foot pedals with his right leg.[91]

As to the cessation of his benefits in November 2011, the ALJ asked Plaintiff whether he could work.[92] Plaintiff explained that he did not feel he could work because of his limited ability to stand and he believed his pain was worsening.[93]

At the conclusion of Plaintiff's testimony, Colenburg discussed Plaintiff's past work history and the capability of an individual with Plaintiff's RFC to perform those or other jobs.[94] Colenburg stated that Plaintiff's past relevant work as a meat cutter fit within the Dictionary of Occupational Titles ("DOT") definition of a meat cutter helper, which Colenburg considered a semi-skilled, light exertional level position.[95] The ALJ presented the following hypothetical individual:

> Would you assume we have someone of the same age, education and past work experience as the claimant. I'd like you to assume this person could only work at a sedentary exertional level. They could occasional [sic] lift/carry, ten pounds, frequently a little less than that. They could stand/walk a total of up to two hours in a normal workday with normal break, and sit for six hours. This person cannot climb ladders, ropes, or scaffolding and could only occasionally climb ramps or stairs. This [sic] can only occasionally balance, stoop,

---

[91]     See id.

[92]     See Tr. 81.

[93]     See Tr. 82.

[94]     See Tr. 86-93.

[95]     See Tr. 89-90.

bend.  This person cannot kneel or crawl and can only
occasionally crouch . . . this person should not have any
jobs working with or around hazards, heights, dangerous
machinery equipment.  No jobs with excessive vibration.[96]

Colenburg stated that such individual could not perform
Plaintiff's past relevant work, but that there would be other jobs
in the national economy for such hypothetical individual, including
final assembler, order clerk, and document preparer.[97]

The ALJ modified the hypothetical individual, adding that
"this person needs to, when standing or walking, needs to use a
cane which would require one hand to manage the cane."[98]  Colenburg
opined that the same three jobs would be available for such
hypothetical individual.[99]  As a final hypothetical, the ALJ added
that "this person, due to impairment, can only stand/walk a total
of one hour for the entirety of the workday.  Of course, that's
with a cane as we said earlier.  Could sit for up to seven hours
Now all the rest is the same . . ."[100]  Colenburg said that there
would be no jobs in the national or regional economy for such
hypothetical individual.[101]

**D.  <u>Commissioner's Decision</u>**

---

[96]    <u>See</u> Tr. 90-91.

[97]    <u>See</u> Tr. 91.

[98]    <u>See</u> Tr. 92.

[99]    <u>See</u> <u>id.</u>

[100]   <u>See</u> <u>id.</u>

[101]   <u>See</u> Tr. 92-93.

On November 14, 2015, the ALJ issued a partially unfavorable decision.[102] The ALJ found that Plaintiff met the requirements of insured status through December 31, 2009, and that the most recent favorable medical decision finding that Plaintiff was disabled was the decision dated February 8, 2007 ("comparison point decision" or "CPD").[103] The ALJ noted that the CPD showed that Plaintiff:

> [H]ad the following medically determinable impairments: left knee problems; left ankle problems due to avascular necrosis; obesity; right knee problems; and low back problems. These impairments were found to result in the residual functional capacity to lift and carry no more than 3-5 pounds; walk no more than half a block at a time without rest periods of 10-15 minutes; stand no more than 10-15 minutes at a time; sit 1 hour at a time; and perform work, which allows for limitations in the ability to read and write, stoop, bend, kneel, and crawl. Secondary to pain, he has difficulty with even simple work due to concentration problems and requires unscheduled breaks in an 8-hour workday and excessive absences from work.[104]

The ALJ stated that Plaintiff had not engaged in substantial gainful activity since November 1, 2011, the end date of Plaintiff's disability.[105] The ALJ recognized that Plaintiff did not have any new impairments from the CPD to November 1, 2011, and stated that Plaintiff's impairments as of February 12, 2014 were the same as the CPD.[106] Plaintiff's severe impairments,

---

[102]    See Tr. 15-25.

[103]    See Tr. 17.

[104]    See Tr. 17-18.

[105]    See Tr. 18.

[106]    See id.

16

individually or collectively, did not meet or medically equal disorders described in the listings of the regulations[107] (the "Listings"), according to the ALJ.[108]  The ALJ found that as of November 1, 2011, medical improvement of Plaintiff's condition occurred.[109]

In determining Plaintiff's RFC to perform work-related activities, the ALJ discussed Plaintiff's alleged symptoms and his medical treatment and stated that he followed the regulatory requirements as to both.[110]  When considering Plaintiff's symptoms, the ALJ first evaluated whether a medically determinable impairment could reasonably be expected to produce the alleged symptoms.[111] Second, he evaluated the "intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit[ed] [Plaintiff's] functioning," making a credibility finding for those symptoms that were not substantiated by objective medical evidence.[112]

The ALJ discussed Plaintiff's medical treatment, including records from: the 2011 x-rays and the late 2013 and 2014 visits to

---

[107]    20 C.F.R. Pt. 404, Subpt. P, App. 1.

[108]    See Tr. 18.

[109]    See Tr. 19.

[110]    See Tr. 19-21.

[111]    See Tr. 19-20.

[112]    See Tr. 19-21.

the Texas Medical Rehabilitation and Pain Center.[113]  The ALJ also reviewed Plaintiff's consultative physical examination by Dr. Mangapuram from October 2011 and the assessments of other state agency consultants.[114]

The ALJ explained that he accorded the opinion of Dr. Mangapuram little weight because the medical evidence demonstrated that Plaintiff had greater limitations.[115]  The state agency consultant opinions were accepted as far as they agreed with the stated RFC finding but were accorded little weight due to other evidence demonstrating greater limitations.[116]  The ALJ discussed Plaintiff's statements regarding the symptoms he experienced as a result of his impairments.[117]  Specifically, the ALJ discussed Plaintiff's issues associated with his knees, ankle, shoulder, and back, and his problems with reading and writing.[118]

Due to the improvements in Plaintiff's medical condition and resulting increase in his RFC, the ALJ stated that this affected his ability to work.[119]  Additionally, it was noted that Plaintiff

---

[113]    See Tr. 20-21.

[114]    See id.

[115]    See Tr. 21.

[116]    See id.

[117]    See Tr. 19-20.

[118]    See id.

[119]    See id.

had a severe impairment or combination of impairments starting on November 1, 2011.[120]

The ALJ found Plaintiff capable of performing sedentary work.[121] Sedentary work is "lifting/carrying ten pounds occasionally and less than ten pounds frequently; standing/walking two hours in an eight-hour day; and sitting six hours in an eight-hour day."[122] The ALJ included the following limitations in Plaintiff's November 1, 2011, to February 12, 2014 RFC: (1) lifting or carrying ten pounds occasionally and less than ten pounds frequently; (2) standing and walking a total of up to two hours in an eight-hour workday with normal breaks; (3) sitting for up to six hours in an eight-hour workday; (4) no climbing of ladders, ropes, or scaffolding; (5) occasional climbing of ramps or stairs; (6) occasional balancing, stooping and bending; (7) no kneeling or crawling; (8) occasional crouching; and (9) never working with or around hazards or dangerous machinery or equipment or excessive vibration.[123] The ALJ additionally noted that Plaintiff "would need to use [a] cane when standing and walking, which would require one hand to manage the cane."[124] The ALJ decreased this RFC as of

---

[120]   See id.

[121]   See Tr. 19.

[122]   Tr. 21 (citing 20 C.F.R. §§ 404.1567(a) & 416.967(a)).

[123]   See Tr. 19.

[124]   Id.

19

February 12, 2014, discussing an MRI and subsequent medical treatment through June 2014.[125]

The ALJ found Plaintiff unable to perform his past relevant work after November 1, 2011, because the demands of Plaintiff's past relevant work were greater than his residual functional capacity.[126] The ALJ noted that Plaintiff was a younger individual as of November 1, 2011, that he had limited education, and could communicate in English.[127] The ALJ concluded that the transferability of job skills prior to February 12, 2014, was not material in determining whether Plaintiff was disabled because the Medical-Vocational Guidelines[128] supported a finding that Plaintiff was not disabled regardless of whether he had transferable job skills.[129]

The ALJ noted that, if Plaintiff has been able to perform a full range of sedentary work, the Medical-Vocational Guidelines

---

[125]     See Tr. 21-22. Plaintiff's RFC as of February 12, 2014, was assessed as: Plaintiff "would be limited to lifting/carrying ten pounds occasionally and less than ten pounds frequently; could stand and walk a total of up to one hour in an eight-hour workday with normal breaks; sit for up to seven in an eight-hour workday; no climbing of ladders, ropes, or scaffolding; occasional climbing of ramps or stairs; occasional balancing, stooping, and bending; no kneeling or crawling; occasional crouching; never working with or around hazards or dangerous machinery or equipment or excessive vibration; and would need to use a cane when standing and walking, which would require one hand to manage the cane.

[126]     See Tr. 23.

[127]     See id.

[128]     20 C.F.R. Pt. 404, Supt. P, App. 2.

[129]     See Tr. 23.

directed a finding of not disabled.[130]   Based on the VE's response

to the ALJ's hypothetical question asking whether a person with

Plaintiff's age, education, work experience, and RFC since November

1, 2011, could perform any jobs in the national economy, the ALJ

found Plaintiff capable of performing the requirements of

occupations such as order clerk, final assembler, and document

preparer.[131]   However, beginning February 12, 2014, the ALJ

concluded, based on the VE's response to another hypothetical

question, that no jobs existed in the national economy for

Plaintiff to perform.[132]   Therefore, the ALJ concluded that

Plaintiff was not disabled prior to February 12, 2014, but became

disabled as of that date, and that Plaintiff was not under a

disability through the date last insured, December 31, 2009.[133]

Plaintiff appealed the ALJ's decision, and, on March 3, 2015,

the Appeals Council denied Plaintiff's request for review, thereby

transforming the ALJ's decision into the final decision of the

Commissioner.[134]   After receiving the Appeal Council's denial,

Plaintiff sought judicial review of the decision by the court.[135]

---

[130]   See id.

[131]   See Tr. 23-24.

[132]   See Tr. 24.

[133]   See Tr. 16.

[134]   See Tr. 1-5.

[135]   See id.; Doc. 1, Pl.'s Compl.

## II. Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: (1) the ALJ applied proper legal standards in evaluating the record; and (2) substantial evidence in the record supports the decision. Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002).

## A. Legal Standard

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the Act. Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3), (d)(5)(A); see also Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

22

> (1) a claimant who is working, engaging in a substantial
> gainful activity, will not be found to be disabled no
> matter what the medical findings are; (2) a claimant will
> not be found to be disabled unless he has a "severe
> impairment;" (3) a claimant whose impairment meets or is
> equivalent to [a Listing] will be considered disabled
> without the need to consider vocational factors; (4) a
> claimant who is capable of performing work that he has
> done in the past must be found "not disabled;" and (5) if
> the claimant is unable to perform his previous work as a
> result of his impairment, then factors such as h[er] age,
> education, past work experience, and [RFC] must be
> considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20
C.F.R. § 416.920. The analysis stops at any point in the process
upon a finding that the claimant is disabled or not disabled.
Greenspan, 38 F.3d at 236.

## B. **Substantial Evidence**

The widely accepted definition of "substantial evidence" is
"that quantum of relevant evidence that a reasonable mind might
accept as adequate to support a conclusion." Carey v. Apfel, 230
F.3d 131, 135 (5th Cir. 2000). It is "something more than a
scintilla but less than a preponderance." Id. The Commissioner
has the responsibility of deciding any conflict in the evidence.
Id. If the findings of fact contained in the Commissioner's
decision are supported by substantial record evidence, they are
conclusive, and this court must affirm. 42 U.S.C. § 405(g);
Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings
exist to support the Commissioner's decision should the court

overturn it.  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment.  Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).  In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless.  Id.

## C.  **Continuing Entitlement**

When determining whether disability benefits may continue, the Commissioner must determine whether substantial evidence supports a finding of medical improvement in the claimant's impairment, and, if so, whether the medical improvement is related to the claimant's ability to work.  20 C.F.R. §§ 404.1594(a), 416.994; see also 42 U.S.C. § 423(f); Griego v. Sullivan, 940 F.2d 942, 943-44 (5th Cir. 1991).  In determining whether medical improvement is related to the claimant's ability to work, the Commissioner will compare both the medical severity of the impairment and the claimant's RFC at the time of the claimant's last favorable medical decision with his current condition.  20 C.F.R. §§ 404.1594(b)(7), (c)(2), 416.994(b)(1)(vii), (b)(2).  Ultimately, the ALJ must decide whether medical improvement has occurred that is related to the claimant's ability to work.  20 C.F.R. §§ 404.1594(a), (c)(2), 416.994(a), (b)(2).

Under Title II, the regulations outline eight steps to follow in making the determination whether the disability continues.  See 20 C.F.R. 404.1594(f).  The steps include reassessing whether: the claimant is engaged in substantial gainful activity; the claimant has experienced a decrease in medical severity; the claimant has experienced medical improvement related to the claimant's ability to perform work; certain enumerated exceptions apply to terminate benefits even if medical improvement has not occurred; and the claimant's improved RFC would allow him to perform his past relevant work or other work.  See 20 C.F.R. 404.1594(f).  Under Title XVI, the steps are the same, except the ALJ does not need to analyze whether the claimant has engaged in substantial gainful activity.  See 20 C.F.R. 416.994(b)(5).

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.  Plaintiff challenges the ALJ's finding that Plaintiff experienced a medical improvement on November 1, 2011, and the ALJ's increased RFC assessment as of that date.[136] Defendant argues that the ALJ's decision is legally sound and is supported by substantial evidence.

### A.  Medical Improvement

---

[136]    Additionally, Plaintiff contends that the Commissioner failed to provide the complete record, namely, the ALJ decision from 2007 used as the comparative point decision and referenced in the ALJ decision on appeal was not attached.  Defendant fixed this error by filing this decision with the court on March 22, 2017.  See Doc. 12, Def.'s Not. of Electronic Filing of Supplemental Admin. Tr.

Plaintiff asserts that the ALJ erred by finding that Plaintiff's condition medically improved on November 1, 2011, stating that the ALJ did not explain what improvements in Plaintiff's impairments occurred.

The regulations define medical improvement as "any decrease in the medical severity" of the impairments that were present at the time of the most recent finding of disability or continued disability. 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(I). The Commissioner bears the burden of demonstrating that medical improvement has occurred and that the claimant is no longer disabled. Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002). A determination that a medical improvement occurred "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(I).

Plaintiff contends that because the ALJ stated that Plaintiff had the same impairments as the CPD decision, there was no increase or change in Plaintiff's medical impairments, and therefore the decision is not supported by substantial evidence. This misconstrues the role of the ALJ, as the ALJ is not required to find that there was an increase in Plaintiff's medical impairments; rather, the ALJ found that Plaintiff's medical condition improved.

In his decision, the ALJ reviewed the medical evidence from the pertinent time period. The examination by Dr. Mangapuram

showed that Plaintiff had a normal range of motion; x-rays showed no back problems and only mild osteoarthritis; and in appointments with the Texas Medical Rehabilitation and Pain Center, Plaintiff reported minimal back pain and that his pain was improved by taking medication. Therefore, the court finds that the ALJ's decision of medical improvement was supported by substantial evidence.

## B.  RFC Finding

Plaintiff challenges the RFC finding from November 1, 2011, to February 12, 2014, contending that it is not supported by substantial evidence. Plaintiff argues that the ALJ does not explain the increases in his RFC.

Any increase in the residual functional capacity must be based on signs, symptoms, or laboratory findings, otherwise the medical improvement will not be found to relate to the claimant's ability to work. 20 C.F.R. §§ 404.1594(c)(2), 416.994(b)(2)(iii). A claimant's RFC is his remaining ability to work despite all of her limitations resulting from her impairment. See 20 C.F.R. § 404.1545(a); Villa v. Sullivan, 895 F.2d 1019, 1023 (5th Cir. 1990). In evaluating the claimant's RFC, the ALJ is directed by the regulations to consider how the claimant's impairment affects his physical, mental, and other abilities, as well as the total limiting effects of his impairment. See 20 C.F.R. § 404.1545.

After arriving at an RFC that takes into account all of the restrictions "reasonably warranted by the evidence," an ALJ may

rely on the response of a vocational expert to a hypothetical question on job availability as it relates to a person with the claimant's limitations. <u>Dominque v. Barnhart</u>, 388 F.3d 462, 463 (5th Cir. 2004); <u>see also</u> <u>Masterson v. Barnhart</u>, 309 F.3d 267, 273-74 (5th Cir. 2002). In order to serve as substantial evidence, the vocational expert's testimony must be based on a hypothetical question that incorporates all of the limitations recognized by the ALJ and must be subject to the claimant's cross-examination. <u>See</u> <u>Masterson</u>, 309 F.3d at 274; <u>Boyd v. Apfel</u>, 239 F.3d 698, 706-07 (5th Cir. 2001).

The Commissioner appropriately applied these legal standards in this case. The ALJ formulated Plaintiff's RFC by looking at the medical evidence, including the consultative examination by Dr. Mangapuram and the records from the Texas Medical Rehabilitation and Pain Center. As the ALJ noted, Dr. Mangapuram's examination found that Plaintiff had a normal range of motion in his joints, no back muscle atrophy, and was able to utilize his knees normally with some pain upon squatting. Additionally, x-rays showed mild osteoarthritis in his left knee and no back abnormality. Records from the Texas Medical Rehabilitation and Pain Center showed Plaintiff reported that his medicine improved his pain by seventy percent and that his back pain was minimal. Therefore, the ALJ's assessment of an increased RFC was supported by substantial evidence.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and Defendant's motion for summary judgment be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 27th day of September, 2017.

_____
U.S. MAGISTRATE JUDGE